Our next argument is in Appeal No. 22-19-10, Eric Benson Skeens v. Ron Neal. Okay, Ms. Kelly, nice to see you. Good morning. Good morning. May it please the Court, Annie Garrow Kelly, on behalf of the Petitioner-Appellant Eric Skeens. Mr. Skeens was accused of serious crimes. It was his trial counsel's prerogative to pursue whatever strategy he felt was best. What he couldn't do is go in front of the jury. Our justice system is to work as it's meant to. What he couldn't do is go in front of the jury and say on behalf of the defendant that he believed Mr. Skeens' accuser. The only thing Mr. Skeens sees from the Court today is the opportunity for a fair trial, a trial in which his own attorney doesn't vouch for his accuser. Under 2254, there are two ways that the Court can get to the important question of whether Mr. Skeens was denied his constitutional right to effective assistance of counsel. The Court can either find that the Indiana Appellate Court's decision was based on an unreasonable determination of the facts, or that it was based on an unreasonable application of federal law. If either one of those are true, the Court can proceed to de novo review. In this case, both are. Ms. Kelly, before you dive into that, you aren't challenging that the Court applied the proper framework, are you? The Indiana Appellate Court? Yes. Yes, Your Honor, we are. We're suggesting, so that brings us to the law question. Our argument is that when the Indiana Appellate Court was required to apply a prejudice analysis under Strickland, it actually applied a sufficiency analysis. You can see that it cited Baber, which is where the sufficiency analysis comes from, so the distinction between the two is critical. Under Strickland, when conducting a prejudice analysis, the Court must consider the totality of the evidence before the jury. So that's the good and the bad, and taking that whole picture, determine if but for counsel's error, there's a reasonable probability the outcome would have been different. Comparatively, when conducting a sufficiency analysis, as the Appellate Court conducted in Baber, the Court considers only the probative evidence and reasonable inferences supporting the verdict. Looking at the analysis conducted by the Indiana Appellate Court, it's clear that that's what they were doing. In support of what it called its prejudice analysis, the Indiana Appellate Court cited three pieces of evidence. It cited the testimony of the accuser, the testimony of the mother, and the testimony of the counselor. Looking at just this analysis, if someone hadn't read the trial transcript, they would think that this was a laydown case for the prosecution, and they would certainly think that all three of those pieces of evidence squarely supported a guilty finding. In fact, and what the opinion leaves out critically, is that only the testimony of the accuser was really clearly bad for Mr. Skeens. The other two pieces of evidence, the mom's testimony and the counselor's testimony, were neutral at best for the state. The Court didn't acknowledge that both of these... So the mom talked about bedwetting and nightmares, and the counselor talked about emotional pain. Both of these symptoms came after the accuser reported the alleged abuse, so a reasonable juror could just as easily find that they fit into a narrative of guilt as innocence. So what you're doing there, I understand. I mean, you're arguing it in terms of prong two of Strickland, right? And that seems to me what you were describing as the legal error that the Indiana Court of Appeals committed. It's hard for me to see it. Maybe that's at the heart of the judge scene. It's hard for me to see a legal error here, a category error. I mean, they recognize Strickland v. Washington. They recognize that it has a two-prong test. They make an assumption on prong one, and then they move to assessing the strength of the state's case at prong two, which is a pretty customary prejudice-style analysis under Strickland. Sure, Judge Scudder. So they absolutely go together, the prejudice prong and this unreasonable application of the law. But what we're saying is that this wasn't an analysis of prejudice. It really was a sufficiency analysis. The Indiana Appellate Court was welcome to look at all of the evidence as a whole and taking it, determine that. But for counsel's error, the result would have been the same. What they couldn't do is put their thumb on the scale and look at evidence that was really neutral at best and put it in a light that was most favorable to the guilty verdict. So what we're asking the court to do, if you get to the de novo review of Strickland, is look at this case and see that without the accuser's testimony, what you're really left with is not a lot that supports a guilty finding. Once you take that out, as trial counsel did effectively with his statement that he believed the accuser, well, I guess what I'm saying is the rest of the evidence that comes in, whether that weighs on the scale on the side of a guilty verdict or on the side of the acquittal, very much depends on whether the jurors found the accuser to be credible. So it really colors everything when they decide one way or the other which way they feel about that testimony. It seems to me your argument about prejudice, when you dive into the record, is built on two things. When her symptoms of trauma, the victim's symptoms of trauma appeared, which is what you just referred to, then also this idea that she may have watched pornography at her mother's house, and that's where she got ideas about sexual acts from. Was there any evidence presented to the jury about that, outside of her testimony, that schemes put it on for her to watch? Or do we only have counsel's statement at closing argument about maybe her mother had these videos at the house and she was able to put them in the VCR and watch them? Your Honor, I'm fairly certain that it did come in front of the jury that regardless of the circumstances, the accuser had seen pornography. And so for what counsel's relying on it for, for what we're relying on it for— I ask you, was there evidence aside from her testimony that schemes put it on for her to watch? Aside from the accuser's testimony? Yes. No, not that I know of, Your Honor. But what that's coming in for, and again, what the Indiana Appellate Court neglected to mention, in its prejudice analysis, is, again, a reasonable juror could look at that evidence and see that the accuser did have an independent way to know of these things that she was describing. Isn't that asking us to re-weigh the evidence? No, Your Honor. What we're asking is for this court to do what the Indiana Appellate Court didn't, and really look at it as a whole and see that without this really egregious, really explosive comment by trial counsel, a juror certainly could have gone either way. But when you hear trial counsel, the person closest to the case, the person closest to the defendant, say, I believe her, that really pushes you to that beyond a reasonable doubt. Trial counsel left no room for reasonable doubt when he built this strategy centered on the credibility of the accuser and then blew it up. What about the fact that this was really an isolated comment, and I think you admit that in your briefs, and the jury was instructed that counsel's statements weren't evidence, just argument? Sure, Your Honor. With regard to the isolated comment, we posit that in light of trial counsel's overarching strategy, which was to build a case that really put only one question in front of the jurors, and that was whether they found Mr. Skeen's accuser to be credible. In light of that strategy, this comment really shed light on the entire proceeding. As far as the weight of trial counsel's statements in closing, it's the effect that his admission had on what the jurors did consider evidence, which was the testimony of the accuser. So it really did change how that evidence would be considered. And there's also an argument that this was close to a judicial admission when trial counsel stands up there on behalf of his client and says, I believe her. Unless the Court has further questions, I'd like to reserve my time for rebuttal. Okay, very well. Mr. Drum, nice to see you. May it please the Court. The State Court reasonably determined that Skeen's counsel did not prejudice him during closing arguments. Counsel argued that the jury should not believe KW's testimony, but even if it did, it should still have reasonable doubt about Skeen's guilt. Counsel's argument spans almost 20 transcript pages. From those pages, Skeen's takes three words, I believe her, out of context, to claim that his counsel conceded his guilt. In context, Skeen's counsel did not concede anything. Counsel's statement was ambiguous and isolated, so the jury likely did not rely on it. Instead, the jury likely relied on the substantial evidence of Skeen's guilt to find Skeen's guilty. The State Court reasonably determined that this statement was ambiguous, and there were two things about it that make it ambiguous. First is it's not clear who the subject is, who is the I in the statement, the I believe her, and it's also not clear what the message is. So regarding the subject, Skeen's argued that his counsel was saying, I, Richard Thoner, believe the victim. But the state post-conviction court and the district court both thought that counsel was speaking as if he was a juror. And that's supported by the fact that right before the statement that Skeen's challenges, counsel specifically refers to and addresses the jury. Counsel says, if you were in a civil court, you certainly could. And then after the statement, counsel says, as a jury, you should require some, you should require corroboration to exclude any reasonable doubt. It's important to remember that we're reading this statement on a cold record. So there are things that counsel could have demonstrated from his body language and his tone that we just don't see. But you agree that if we agree with the Indiana Court of Appeals that it's ambiguous, and so let's just call it deficient. The real question at the end of the day then is about prejudice. I agree. The state court's decision was absolutely based on prejudice. And the way the ambiguity comes in there is what the court is saying is because the statement is ambiguous, it wasn't likely that the jurors relied on it at all. Instead, the jury probably looked at all the other statements that counsel made in which counsel told the jury not to believe KW's testimony and gave it reasons why and then also made this alternative argument that if you do believe her testimony, you should still find Skeen's not guilty because her testimony is only sufficient under a civil standard, but it's not sufficient under a criminal standard. Can you acknowledge and respond to Mr. Skeen's countervailing argument? Your argument is since it's ambiguous, the jury may not have paid attention to it at all or relied on it at all. Their argument is that's such a standout comment, you rarely hear a lawyer say, I believe my client's accuser, that the same jury very well could have paid attention. You see? So you all are on two opposite sides of the question there and you should address that. I see that. Why is your conclusion far more reasonable than Mr. Skeen's? I think the only question before the court is was the state court's determination reasonable? So Skeen's has to show that no reasonable judge could agree with the state court here that this statement was ambiguous. And if you put the statement in just a little bit of context, the sentence right before No, discuss it in terms of the prejudice prong, please. And that's what I mean. That's what I mean. The ambiguity goes toward the prejudice because counsel isn't clearly saying, I believe the victim. He's not clearly saying that. And so it's not likely that the jury heard that statement and thought that's what he was saying, especially in the context of his remaining argument in which he's arguing that the jury should find Skeen's not guilty. I guess what I'm asking is why don't you take Ms. Kelly's position for the moment, that it is a standout argument, that it would catch a juror's attention. Wait, his lawyer just said he believes the accuser. What then follows if we're looking narrowly at the prejudice question? Is that a problem prejudice-wise? Does the state still win on prejudice? Absolutely. Because this would be an isolated statement, as the state court found, this is the only time Skeen's counsel said anything like that. And the state's case against Skeen's was substantial. The victim's testimony was compelling. She described details about how it felt when Skeen's repeatedly molested her, which she wouldn't have understood just from watching pornography. I'd like to address the pornography question that you raised before. The victim's testimony that Skeen's showed her pornography was the only evidence that she ever saw pornography. K.W.'s mother testified that she didn't watch pornography on a computer. She had never shown it to her. She would use a computer to look at things like Barbie. So that was the only evidence about that. And Skeen's isn't challenging his counsel's decision not to bring that up because that wouldn't be something you'd want to raise with the jury, the fact that she saw this pornography when he showed it to her. Mr. John, would you please address Ms. Kelly's argument that the lower court should have assessed all of the evidence rather than just looking at the bad evidence? The court did exactly what Strickland said it was supposed to do. It looked at the strength of the state's case and compared that to the alleged error and asked whether there was a reasonable probability that the error affected the outcome. Now, Skeen's didn't specifically make the argument below that some of this evidence, some of this strong evidence wasn't actually as strong as it appears. This is the first time that he's made that. Below his prejudice argument was just that Skeen's did not cross-examine the victim. Skeen's counsel did not cross-examine the victim. And then he made the statement and he argued that basically sealed his fate. So he did his fate. So he didn't argue based on the supposed weaknesses in the bed-wetting and the nightmares and the pornography. He didn't make that argument below. And Strickland doesn't require the state court to completely re-weigh the state's evidence every time a petitioner argues that his counsel was ineffective. The court is only supposed to look at the evidence that was affected by the alleged error. And here, counsel's ambiguous and isolated statement didn't affect the evidence. The state's case was equally as strong with or without that statement. So it's not likely that the jury relied on it. It's not likely that it changed the outcome of Skeen's trial. And even if the court were to conclude that the state court's decision was unreasonable, even under de novo review, Skeen's cannot show that his counsel performed deficiently. His overall performance, which is what the court should look at, was active and capable. He was active from voir dire all the way through his closing argument. And I summarized his performance in my brief, and so does the district court has a nice summary of everything the counsel did for Skeen's. And it's also important, as you mentioned earlier, Judge St. Eve, that the trial court instructed the jury that the counsel's statements were not evidence and that the jury had to base its verdict on the evidence. And so it's not reasonably likely that the jury relied on this one thing that Skeen's counsel said during closing argument to find Skeen's guilty of these five felonies. And unless the court has any more questions, I would ask you to affirm the district court. Thank you. Okay. You're welcome, Mr. Drum. Ms. Kelly? Thank you, Your Honor. I'll first address the question of ambiguity. The state and the Indiana appellate court are doing almost these kind of theoretical gymnastics to impute meaning onto these words, I believe her, that they simply don't have. And for the court to agree with Mr. Skeen's on this point, it needs to look no further than elsewhere in the Indiana appellate court's own decision in footnote three, where looking at these same words, it found them to mean that Mr. Skeen's trial counsel, quote, implied that he disbelieved Skeen's. You can't have it both ways. The Indiana appellate court knew what the words meant, and more importantly, so did the jurors. With regard to the question of whether context changes this, we submit that the context of trial counsel's argument actually supports a finding that trial counsel meant exactly what he said. For whatever reason, he was operating under a misunderstanding of law, where he apparently thought that the prosecution couldn't just rely on the testimony of the accuser, that it wasn't enough, when in fact under Indiana law it was. But his statement, I believe her, is perfectly consistent with that understanding. As the prosecutor said in her closing, you either believe the accuser or you don't. Mr. Skeen's trial counsel said that he believed her, and in doing so, he pushed the jurors to do the same. We ask that you grant Mr. Skeen's petition for habeas relief. Thank you. Okay. Thank you, Ms. Kelly. Ms. Kelly, I know you took the argument today on appointing for the court by stepping in. We really appreciate that, very much appreciate helping your colleagues as well. Mr. Drum, thanks to you, we'll take the appeal under advisement.